b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IAN FRIDGE | CIVIL ACTION 1:15-CV-01998 |
| VERSUS | JUDGE DRELL |
| CITY OF MARKSVILLE, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 39). For the reasons detailed below, Defendants' Motion to Dismiss (Doc. 39) is GRANTED IN PART AND DENIED IN PART.

### I. Background

Plaintiff Ian Fridge ("Fridge") filed a complaint pursuant to 42 U.S.C. § 1983 and Louisiana law against Defendants: City of Marksville ("the City"); Marksville Police Chief Elster Smith, Jr. ("Chief Smith") (in his individual and official capacities); Avoyelles Parish District Attorney Charles A. Riddell III ("D.A. Riddle") (in his individual and official capacities); Marksville Police Officer Derrick Stafford ("Stafford") (in his individual capacity only); Marksville Police Officer Norris Greenhouse ("Greenhouse") (in his individual capacity only); Marksville Police Officer Joseph Montgomery ("Montgomery") (in his individual capacity only); Marksville Police Officer Damion Jacobs ("Damion Jacobs") (in his individual capacity only); Marksville Police Officer Kevin Hill ("Hill") (in his individual capacity only); and Marksville Police Officer Eric Jacobs ("Eric Jacobs") (in his individual capacity only).

Fridge alleges that, on July 4, 2014, he was unconstitutionally arrested and prosecuted by the City for engaging in lawful and constitutionally protected activities–he (with other members of the Libertarian Party) wore a holster containing a non-concealed firearm to demonstrate his support for the Second Amendment right to bear arms at the Avoyelles Arts and Music Festival in Marksville. (Doc. 1). Fridge remained outdoors at all times and did not drink any alcohol. (Doc. 1).

Fridge contends that, while he conversed with an officer about the Second Amendment, two other officers approached Fridge from behind and attempted unsuccessfully to grab his firearm. (Doc. 1). Fridge asked them not to touch his firearm and began making a video recording of the interaction with his cell phone. (Doc. 1). The officer again reached for Fridge's firearm. (Doc. 1). Fridge claims the officer was attempting to entice Fridge to reach for his weapon, but Fridge kept his hands away from the firearm. (Doc. 1). The two officers who had approached Fridge from behind told him he should not be there. (Doc. 1). Fridge asked if there was a law prohibiting him from carrying the firearm on the festival grounds, in which case he would leave. (Doc. 1). In response, the two officers grabbed Fridge's arms and attempted to pin them behind his back. (Doc. 1).

Fridge initially attempted to pull away, then stopped resisting. (Doc. 1). Several officers then wrestled Fridge to the ground, shouting "stop resisting" and "don't reach for you weapon" in order to create the false impression that Fridge was being combative. (Doc. 1). Fridge informed the officers they were causing him severe pain in the shoulder and wrist where he had recently undergone surgeries. (Doc. 1).

2

Fridge complained again that his handcuffs were too tight, in response to which they officers tightened the cuffs further. (Doc. 1). While Fridge was lying face-down on the ground in handcuffs, an officer tasered him repeatedly. (Doc. 1). Fridge was searched and then placed in a closed and unventilated police vehicle. (Doc. 1). Fridge's phone was confiscated and his video of the incident was deleted. (Doc. 1).

Fridge was booked into the Avoyelles Parish Prison and charged with: (1) resisting arrest, La. R.S. 14:108; (2) battery on a police officer, La. R.S. 14:34.2; (3) remaining after being forbidden, La. R.S. 14:63.3; and (4) possessing a firearm on the premises of an establishment that serves alcohol, La. R.S. 14:95.5. (Doc. 1). Fridge further alleges he was never advised of his Miranda rights, he remained in jail for three days and was not given food or water for the first 24 hours, and he was not given medical care. (Doc. 1).

According to the arrest record attached to Fridge's complaint (Doc. 1, Ex. A), Officer Stafford stated in his report that: (1) he was in charge of all officers at the festival; (2) Stafford and Greenhouse approached Fridge from behind while Hill spoke with Fridge; (3) Hill advised Fridge he could not possess a firearm because alcoholic beverages were being sold "on the grounds"; (4) Stafford and Greenhouse "grabbed" Fridge and, with Damion Jacobs, took Fridge to the ground; (5) Jacobs grabbed Fridge's arm and gave Fridge's weapon to Montgomery; (6) Fridge's firearm was seized; (7) Stafford tasered Fridge while he was on the ground and surrounded by four officers; (8) Fridge was then handcuffed; and (9) Sgt. Parnell transported Fridge to the Avoyelles Parish Jail.

Fridge contends he has never been convicted of a felony, he was in lawful possession of the firearm, he had not entered any business selling alcohol, he had not imbibed any alcohol, and he did not strike any officer. Fridge alleges the officers lacked probable cause to search him, seize his property, and arrest him, and lacked reasonable suspicion that Fridge was a danger. (Doc. 1). Fridge alleges his firearm was never returned to him.

Fridge also contends Defendants violated his constitutional rights and committed the criminal acts.[1] Fridge further contends Defendants instituted and/or maintained a policy or custom of: (1) targeting and harassing individuals exercising their rights to assemble and engage in political speech and condoning violations of civil rights; (2) violating the Second Amendment right to bear arms; (3) condoning unlawful searches and seizures; (4) use of excessive force; and (5) interrogating individuals without advising them of their rights under the Fifth Amendment. (Doc. 1).

Fridge seeks monetary damages, injunctive relief, costs, attorney's fees, and a jury trial. (Doc. 1).

D.A. Riddle filed a Motion to Dismiss (Doc. 8). On a joint motion by Riddle and Fridge, a consent judgment was entered and Riddle was dismissed (Doc. 15).

The remaining Defendants filed a Rule 12(b)(6) Motion to Dismiss as to some of Fridge's claims and, alternatively, a motion to stay proceedings (Doc. 27). The

---

[1] Fridge alleges Defendants committed the crimes of: (1) criminal conspiracy, La. R.S. 14:26; (2) battery, La. R.S. 14:33; (3) simple kidnapping, La. R.S. 14:45; (4) false imprisonment, La. R.S. 14:46: (5) filing or maintaining false public records, La. R.S. 14:144; and (6) malfeasance in office, La. R.S. 14:134.

Motion to Stay was granted pending the outcome of the charges against Fridge, in the event this suit was rendered moot pursuant to Heck v. Humphrey 512 U.S. 477 (1994).[2] (Doc. 29).

D.A. Riddle dismissed the criminal charges against Fridge and the stay was lifted[3] (Doc. 37). Defendants re-filed their Rule 12(b)(6) Motion to Dismiss and included a "request" for stay of discovery. (Doc. 39).

Fridge's brief in response includes two "requests" to voluntarily dismiss some of his claims and a "request" for leave to amend the Complaint pursuant to Fed. R. Civ. P. 15. (Doc. 45).

II. Law and Analysis

    A. Standards Governing a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Legate v. Livingston,

---

[2] Heck is concerned with judgments in civil proceedings that would necessarily imply the invalidity of a criminal conviction or sentence. A § 1983 claim implicating the validity of a conviction or sentence does not accrue until the conviction or sentence has been overturned. "If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Wallace v. Kato, 549 U.S. 384, 391 (2007); Vidrine v. United States, 07-1204, 2008 WL 4198547 at *6 (W.D. La. 2008).

[3] An order of dismissal based on the affirmative decision not to prosecute is an example of a favorable termination. See Brandley v. Keeshan, 64 F.3d 196, 199 (5th Cir. 1995), abrogated on other grounds in Mapes v. Bishop, 541 F.3d 582, 584 (5th Cir. 2008).

822 F.3d 207, 210 (5th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

B. **Defendants' unopposed Motion to Dismiss the §1983 claims against Chief Smith in his official capacity should be granted.**

In his brief, Fridge asks the Court to dismiss his official capacity federal claims against Chief Smith. (Doc. 45, p. 13). Accordingly, Defendants' unopposed Motion to Dismiss Fridge's official capacity federal claims[4] against Chief Smith should be granted. (Doc. 39).

C. **Defendants' unopposed Motion to Dismiss the § 1983 claims against the City should be granted.**

In his brief, Fridge asks the Court to dismiss the City "in its official capacity as the employer of these defendants for his Federal claims only" because there is no *respondeat superior* liability under § 1983. (Doc. 45, p. 13).

A municipality does not have separate individual and official capacities. However, Fridge explains that he wants his § 1983 claims against the City dismissed because it cannot be liable under § 1983 for the acts of its employees.[5] Fridge further

---

[4] Fridge also alleges individual capacity federal claims and state law claims against Chief Smith that are not dismissed.

[5] In Monell v. New York City Dept. of Social Services, 436 U.S. 658, 689 (1978), the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of Section 1983 and that, since there is no *respondeat superior* liability under §

6

explains that he intends to pursue his state law claims for vicarious liability against the City, because it can be held liable under state law for the individual officers' delicts committed within the course and scope of their employment.

Because it is unopposed by Fridge, Defendants' motion to dismiss the § 1983 claims against the City should be granted.

### D. Defendants' Motion to Dismiss Fridge's § 1983 claim against Chief Smith for violation of his constitutional rights pursuant to a municipal policy of custom should be granted.

Defendants argue that Fridge has not alleged or shown a municipal policy or custom pursuant to which Chief Smith can be held liable under § 1983.

Fridge alleges in his complaint (Doc. 1) that Chief Smith instituted and/or maintained a policy, practice, or custom of: (1) targeting and harassing individuals exercising their rights to assemble and engage in political speech and condoning violations of civil rights by MPD officers; (2) violating the Second Amendment right to bear arms; (3) condoning unlawful searches and seizures by MPD officers; and (4) routinely interrogating individuals without advising them of their rights under the Fifth Amendment. (Doc. 1).

A plaintiff seeking to impose liability on a municipality under § 1983 is required to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of

---

1983, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.

those officials whose acts may fairly be said to be those of the municipality. See Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 403-404 (1997).

There are two forms that "official policy" may take. First, a plaintiff may point to a policy statement formally adopted by an official policymaker. See Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984), on reh'g, 739 F.2d 993 (5th Cir. 1984). In the alternative, a plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." See Webster, 735 F.2d at 841; see also Balle v. Nueces County, Texas, 690 Fed. Appx. 847, 852 (5th Cir. 2017). A custom or policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct. See Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 169 (5th Cir. 2010), cert. den., 564 U.S. 1038 (2011) (citing Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984), on reh'g, 739 F.2d 993 (5th Cir. 1984)).

For purposes of this motion, the Court assumes without finding that Chief Smith is a final policymaker for his department.

To survive a motion to dismiss, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." Balle, 690 Fed. Appx. at 852 (quoting Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997)). Thus, pleadings are sufficient when they make specific factual allegations that allow a court to reasonably

8

infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs. See Balle, 690 Fed. Appx. at 852 (citing Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993)).

Threadbare allegations and recitations of the elements of a cause of action will not suffice to defeat a motion to dismiss. See Doe v. Harris County, Texas, 751 Fed. Appx. 545, 550 (5th Cir. 2018) (citing Iqbal, 556 U.S. at 678). The simple allegation that a "policy or custom" existed, without reference to a specific policy or custom, is the kind of formulaic pleading that does not pass muster under Iqbal. See Doe, 751 Fed. Appx. at 550.

Therefore, under the Fifth Circuit's standard, the issue is whether Chief Smith maintained a practice of allowing officers to target and harass individuals exercising their rights to assemble and engage in political speech; violating the Second Amendment right to bear arms; condoning unlawful searches and seizures; and interrogating individuals without first advising them of their rights under the Fifth Amendment. (Doc. 1).

Fridge has not identified any formally adopted policies. The only factual support offered for the allegation that a policy or custom existed is what happened to Fridge himself. If the Court were to treat those allegations as sufficient, it would collapse municipal liability under § 1983 into respondeat superior, which the Court plainly may not do. See Doe, 751 Fed. Appx. at 550.

Finally, a single unconstitutional act by a local governmental entity's final policy-maker can subject that governmental entity to liability under § 1983. See Bennett v. Pippin, 74 F.3d 578. 586 (5th Cir. 1996), 519 U.S. 817 (1996). Fridge has not identified a single decision by Chief Smith that as the direct cause of the alleged violations of his constitutional rights.

Because Fridge has not identified any policies, customs, or decisions by Chief Smith that were the direct cause of the alleged violations of his constitutional rights, Defendants' Motion to Dismiss Fridge's § 1983 claims of unconstitutional policies or customs against Chief Smith (Doc. 39) should be granted.

### E. Defendants' Motion to Dismiss the § 1983 failure to train and supervise claims against Chief Smith in his individual capacity should be granted.

Defendants filed a Rule 12(b)(6) motion to dismiss Fridge's claims against Chief Smith in his individual capacity for failure to train or supervise his officers. Although Defendants did not specify either state or federal law, their arguments pertain only to federal law. (Doc. 45).

Fridge alleges Chief Smith is liable to him under § 1983, in his individual capacity, for failure to train the Defendant-officers. Fridge contends the MPD/Chief Smith: (1) does not train or inform its officers as to the limits of their authority; (2) tolerates or encourages unconstitutional police tactics and overlooks misconduct by his officers; (3) trains officers to violate the constitutional rights of individuals; (4) failed to adopt and enforce "appropriate" policies; (5) failed to properly recruit, train, and supervise law officers; (6) failed to fully investigate allegations of officer misconduct; (7) failed to identify and respond to patters of at-risk officer behavior;

10

and (8) failed to enact appropriate performance review and promotional systems.[6] (Doc. 1). Fridge's allegations against Chief Smith appear to be, essentially, failure to train and supervise his officers.

Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause plaintiff's injury. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); Thompkins, 828 F.2d at 303.

"To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the training procedures were inadequate, (2) that defendant was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the violations in question." Trammell v. Fruge, 868 F.3d 332, 345 (5th Cir. 2017) (citing Zarnow, 614 F.3d at 170). "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." Trammell, 868 F.3d at 345 (quoting Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005)); see also Westfall v. Luna, 903 F.3d 534, 552 (5th Cir. 2018). A failure-to-supervise claim is evaluated in the same way as a failure-to-train claim. See Trammell, 868 F.3d at 344. (citing Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003)).

---

[6] Fridge makes several other allegations against the City, its Police Department, and Chief Smith, but they are essentially repetitive.

11

Fridge fails to identify any specific inadequacies in the MPD training materials or procedures that give rise to his claim. Fridge alleges only that Chief Smith failed to take advantage of a free training program for police officers offered by the local United States Attorney, and that Chief Smith places inexperienced officers in the field with more experienced officers for training purposes. Fridge also alleges Smith overlooked "misconduct" by his officers, tacitly permitting them to continue to "engage in misconduct without consequence or accountability."

Fridge makes only general, vague allegations. Fridge has not shown that Chief Smith provide no training or inadequate training to his officers, or that he failed to adequately supervise them. Fridge has not pointed to any specific deficiencies in training or supervision that resulted a violation of his constitutional rights.

Accordingly, Defendants' Motion to Dismiss Fridge's § 1983 claims against Chief Smith in his individual capacity for failure to train and supervise should be granted. The only remaining claims against Chief Smith are state law claims.

### F. <u>Fridge has not shown that his Second Amendment and due process claims for improper retention of his firearm by Defendants are ripe.</u>

Fridge also contends his firearm was improperly retained by Defendants after the charges against him were dismissed, as a result of Smith's policy of retaining firearms.

Fridge's claim that his firearm was improperly retained is not properly before this Court. Fridge has a state law remedy pursuant to La. R.S. 40:1798(D) ("If the seized or forfeited firearm is not contraband, and if the law enforcement agency knows the owner of the seized or forfeited firearm, and if the owner did not commit

12

any violation of any federal or state law or local ordinance in which the seized or forfeited firearm was involved, and if the owner may lawfully possess the seized or forfeited firearm, the law enforcement agency shall return the seized or forfeited firearm to the owner.") and La. R.S. 15:41(C) ("Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court. In all other cases the court may either render an *ex parte* order for the disposition of the property as herein provided on motion of any interested person, or on its own motion, or the court may require a motion contradictorily with the apparent owner or the person in possession of the property at the time of the seizure."). There is no authority for the government to hold the property when, by its own act, it has ceased active "use" or "need" for the "evidence". See Houston v. City of New Orleans, 682 F.3d 362, 364 (5th Cir. 2012) ("[W]hen the government's 'use' or 'need' for evidence 'in connection with a criminal proceeding' is ended, its right to withhold such property from the undisputed owner also terminates."). A plaintiff's claims of violations of the Second Amendment and procedural due-process are not ripe until the plaintiff has attempted and been unable to secure the return of his firearm under state law. See Houston, 682 F.3d at 364.

Because Fridge has not alleged or shown that he has unsuccessfully sought the return of his firearm pursuant to state law, his Second Amendment and procedural due-process claims are not yet ripe and should be dismissed without prejudice.

G.     <u>**Chief Smith and the City are entitled to discretionary immunity from Fridge's state law claim for failure to train.**</u>

Chief Smith and the City contend they are entitled to discretionary immunity against Fridge's stat law claim that they failed to properly train the Markville police officers.

The Discretionary Immunity Statute, La. R.S. 9:2798.1,[7] which is applicable at all times, provides only qualified immunity to public entities and their officials and employees for policymaking and discretionary acts.

As of the (2015) date of the events in this case, the hiring, training, supervision, and retention of law enforcement officers in Louisiana were discretionary functions.[8]

---

[7] La. R.S. 9:2798.1 states in pertinent part:
    A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
    B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts within the course and scope of their lawful powers and duties.
    C. The provisions of Subsection B of this Section are not applicable:
        (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
        (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

[8] Minimum initial training (after P.O.S.T. certification) and annual training requirements were established by statute in 2017. <u>See</u> La. Acts 2017, No. 210, § 1 (eff. 6/14/2017); La. R.S. 40:2404.2. Moreover, there has long been a statutory requirement that training be provided only by accredited training centers. <u>See</u> La. R.S. 40:2405.3. Thus, it is now non-discretionary that officers be provided mandatory basic and annual training at accredited training centers. Which accredited training centers are utilized and the amount of training officers receive beyond the mandatory initial and annual training is discretionary.

14

See Smith v. Lafayette Parish Sheriff's Dept., 2003-517 (La. App. 2d Cir. 4/21/04), 874 So. 2d 863, 8668, writ den., 2004-C-1886 (La. 10/29/04), 885 So.2d 595; Romain v. Governor's Office of Homeland Sec., 2016 WL 3982329, at *14 (M.D. La. 2016). Because the events complained of herein occurred in 2015, Chief Smith and the City are entitled to discretionary immunity from Fridge's state law claims of negligent training.

Therefore, Defendants' Motion to Dismiss Fridge's state law failure-to-train claim against Chief Smith and the City should be granted. This holding does not affect Fridge's claims against Smith and the City for vicarious liability under state law.

H. **Defendants Stafford, Greenhouse, Montgomery, Damion Jacobs, Hill, and Eric Jacobs are not entitled to discretionary immunity against Fridge's state law claims.**

Defendants Stafford, Greenhouse, Montgomery, Damion Jacobs, Hill, and Eric Jacobs also argue they are entitled to discretionary immunity against Fridge's state law claims, pursuant to La. R.S. 9:2798.1.

Section 9:2798.1 "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns." Lockett v. New Orleans City, 639 F.Supp.2d 710, 745 (E.D. La. 2009), aff'd, 607 F.3d 992, (5th Cir. 2010), cert. den., 562 U.S. 1003 (2010) (quoting Saine v. City of Scott, 819 So.2d 496 (La.App. 3 Cir. 2002) ; see also Adams, 2016 WL 4275246, *9; Chaney v. Nat. R.R. Passenger Corp., 583 So.2d 926, 929 (La. App. 1 Cir. 1991). Discretionary immunity "protects the

government from liability only at the policy-making or ministerial level, not at the operational level." Lockett, 639 F. Supp. 2d at 745 (quoting Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989)).

The decisions of police officers working in the field are "operational level" and discretionary immunity is not applicable because they are not engaged in policy-making or ministerial acts. Compare Lockett, 639 F. Supp. 2d at 745; see also Adams v. City of New Orleans, 2016 WL 4275246 (E.D. La. 2016) ; Randle v. Tregre, 147 F. Supp. 3d 581 (E.D. La. 2015), aff'd, 670 Fed. Appx. 285 (5th Cir. 2016); Saine, 819 So.2d at 501. Since Fridge complains about the manner in which the individual Defendant-officers in this case restrained, arrested, and incarcerated him, their actions are operational rather than policy-making and they are not entitled to discretionary immunity.

Because Defendants Stafford, Greenhouse, Montgomery, Damion Jacobs, Hill, and Eric Jacobs are not entitled to discretionary immunity, their motion to dismiss Fridge's state law claims (Doc. 39) should be denied.

I. **Defendants are not entitled to dismissal of the bystander liability claims.**

Additionally, Defendants appear to argue they should not be held liable if they did not have any direct involvement in Fridge's arrest but were only bystanders.

The Fifth Circuit has held that law enforcement officers are obligated to prevent fellow officers from violating a citizen's constitutional rights. Generally, to prevail on a § 1983 claim against an officer for failure to intervene/bystander liability, the plaintiff must prove the defendant officer: (1) knows a fellow officer is violating

16

an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act. See Lewis v. City of Shreveport, 2018 WL 1162987, at *9 (W.D. La. 2018) (citing Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013)). Therefore, Defendants' Motion to Dismiss Fridge's § 1983 bystander liability claims should also be denied.

To prevail on a negligence claim under La. C.C. art. 2315, the plaintiff must prove by a preponderance of the evidence that: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages). See Smith v. Lafayette Par. Sheriff's Dept., 2003-517 (La. App. 3 Cir. 4/21/04), 874 So.2d 863, 869, writ denied, 2004-1886 (La. 10/29/04), 885 So.2d 595 (citing Theriot v. Lasseigne, 93–2661 (La.7/5/94); 640 So.2d 1305; Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993)).

Generally, a "police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action." See Smith, 874 So.2d at 869 (quoting Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976)) "His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances." See id. Officers are held to choosing a course of action which is reasonable under the circumstances. See Smith,

874 So.2d at 869 (citing Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318, 325); see also Grant v. Police Dep't ex rel. City of Natchitoches, 2014 WL 1246353, at *14–15 (W.D. La. 2014). Therefore, Defendants may also be held liable as bystanders under Louisiana state law.

Because officers may be held liable for standing by and doing nothing to prevent another officer from violating constitutional rights under both § 1983 and state law, Defendants' Motion to Dismiss Fridge's bystander claims should be DENIED.

## III. Conclusion

Because it is unopposed, IT IS RECOMMENDED that Defendants' Motion to Dismiss Fridge's official capacity § 1983 claims against Chief Smith (Doc. 39) be GRANTED.

Because it is unopposed, IT IS RECOMMENDED that Defendants' Motion to dismiss Fridge's § 1983 claims against the City (Doc. 39) be GRANTED.

Because Fridge has not identified any policies or customs by Chief Smith that were the direct cause of the alleged violations of his constitutional rights, IT IS RECOMMENDED that Defendants' Motion to Dismiss Fridge's § 1983 claims against Chief Smith in his individual capacity for unconstitutional policies or customs (Doc. 39) be GRANTED.

Because Fridge failed to allege his claims with the required specificity, IT IS RECOMMENDED that Defendants' Motion to Dismiss Fridge's § 1983 claims against

Chief Smith in his individual capacity for failure to train or supervise (Doc. 39) be GRANTED. the City

Because Chief Smith and the City are entitled to discretionary immunity, IT IS RECOMMENDED that Defendants' Motion to Dismiss Fridge's state law failure-to-train claim against Chief Smith and the City (Doc. 39) be GRANTED.

Because Fridge's his Second Amendment and procedural due-process claims for retention of his firearm are not ripe, IT IS RECOMMENDED that those claims be DISMISSED WITHOUT PREJUDICE.

Because they are not entitled to discretionary immunity, IT IS RECOMMENDED that the Motion to Dismiss Fridge's state law claims against Defendants Stafford, Greenhouse, Montgomery, Damion Jacobs, Hill, and Eric Jacobs (Doc. 39) be DENIED.

Because officers may be held liable under both § 1983 and state law for standing by and doing nothing to prevent another officer from violating constitutional rights, IT IS RECOMMENDED that Defendants' Motion to Dismiss Fridge's bystander claims (Doc. 39) be DENIED.

IT IS RECOMMENDED that Defendant's request for a stay of discovery (Doc. 39) be DENIED.

Because Fridge has claims remaining before the Court, IT IS RECOMMENDED that Fridge's request to amend his complaint (Doc. 45) be DENIED.

The claims that remain are: (1) Fridge's state law claims for respondeat superior liability against Chief Smith and the City; and (2) Fridge's § 1983 and state law claims against Defendants Stafford, Greenhouse, Montgomery, Damion Jacobs, Hill, and Eric Jacobs.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __8th__ day of April, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge

20